**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHARON F. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-02756 |
| | ) | |
| v. | ) | |
| | ) | Hon. Gary Feinerman |
| CYNTHIA MARTIN *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT BOARD OF EDUCATION OF LAKE
FOREST HIGH SCHOOL DISTRICT 115'S MOTION TO DISMISS**

This case arises out of the childhood sexual abuse of plaintiff Sharon F. while she was a student at Lake Forest High School in Lake Forest, Illinois from the fall of 1986 until the spring of 1988.  (See Complaint ("C") ¶19-28).  Defendant Cynthia Martin ("Martin") used her position as a paraprofessional, teacher and softball coach at the high school to groom and then sexually abuse Plaintiff.  (C. ¶6, 7, 19-28).

Defendant Board of Education of Lake Forest High School District 115 ("District") operated Lake Forest High School and employed Martin. (C. ¶1-5).  The District was aware that Martin was using her position as a teacher and coach to groom and then sexually assault female students under her supervision and care, but concealed this knowledge from the students, their parents, and the public, and allowed the childhood sexual abuse of female students to continue. (C. ¶10-18, 31-38)

On May 21, 2021, Plaintiff filed the instant complaint against Martin and the District, including claims for childhood sexual abuse (Count I); battery (Count II); willful and wanton misconduct (Count III); negligence (Count IV); negligent failure to follow procedures (Count V); breach of fiduciary duty (Count VI); intentional infliction of emotional distress (Count VII);

1

negligent infliction of emotional distress (Count VIII); negligent failure to supervise (Count IX); negligent retention (Count X); Title XI Discrimination (Count XI); and constitutional violations (Count XII, XIII).

The District has now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12 (b) (6). On a Rule 12 (b) (6) motion, the Court construes the complaint in the light most favorable to the plaintiff, accepts all well pled facts as true, and draws all inferences in his favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The complaint "does not need detailed factual allegations," but only "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even after *Twombly* and *Iqbal*, the federal pleading standard requires only that a plaintiff provide enough detail in a complaint to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Applying these standards, the motion to dismiss must be denied.

## I.     THE CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

The District first argues that all of the claims are time barred by the Illinois two year statute of limitations for personal injuries, 735 ILCS 5/13-202. (Memorandum p.2-5). Statutes of limitations are affirmative defenses that a defendant may assert or waive. *Doe A. v. Diocese of Dallas*, 234 Ill.2d 393, 413, 917 N.E.2d 475, 487 (2009). It is well settled that a plaintiff need not anticipate and attempt to plead around affirmative defenses, and so unless the complaint

2

alleges facts that create an ironclad statute of limitations defense, dismissal under Rule 12(b)(6) is improper and the limitations argument must await factual development. *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005). Because factual disputes exist in this case, dismissal under Rule 12 (b)(6) is improper.

**A.     The Claims Are Timely Under the Discovery Rule.**

The District argues that the Plaintiffs' claims are time barred under the two year personal injury statute of limitations which it claims began to run when she turned 18 years old. (Memorandum p.2-3, 735 ILCS 5/13-202, 5/13-211). The District acknowledges that Illinois has enacted a specific statute of limitations for claims "based on childhood sexual abuse," *see* 735 ILS 5/13-202.2, but argues that this statute is not applicable because Plaintiff's claims were already time barred before the childhood sexual abuse statute went into effect in 1991, and thus the statute does not apply[1]. (Memorandum p.2, *M.E.H. v. L.H.*, 177 Ill.2d 207, 214-215, 685 N.E.2d 335, 339 (1997).

Assuming for purposes of this motion that the personal injury statute of limitations applies to all of the claims, the Complaint is not time barred on its face. The Complaint alleges the discovery rule, which the District admits tolls the statute of limitations until the plaintiff knows that she was injured and that her injury was wrongfully caused. (Memorandum p.3). The applicability of the discovery rule is ordinarily a question of fact. *Clay v. Kuhn*, 189 Ill.2d 603, 609, 727 N.E.2d 217, 221 (2000).

In this case, Plaintiff alleges that Martin's sexual abuse caused physical and psychological injuries that prevented her from discovering that she had been sexually abused and injured until July, 2019 at the earliest. (C. ¶29, 30). The Complaint also alleges that Plaintiff

---

[1]     Section 5/13-202.2 has been amended over the years, and the time period for bringing childhood sexual abuse claims has been extended from two years to ten years to twenty years to no statute of limitations.

suppressed the memories of the abuse she suffered until recently when she discovered that she had been suppressing the memories of her abuse, discovered her injuries, and became aware of her causes of action against the defendants. (C. ¶40).

Federal courts in this District applying federal notice pleading requirements have found that similar allegations sufficiently plead the discovery rule. *Tate v. Sheahan*, 2019 WL 2248543, *2 (N. D. Ill. May 24, 2019) (Discovery rule applied where Plaintiff alleged that she repressed the sexual abuse until 2016.), *Doe v. Society of the Missionaries of the Sacred Heart*, 2012 WL 5499430, *4 (N.D. Ill. Nov. 13, 2012) (Allegations that Plaintiff did not recognize Defendant's conduct as sexual abuse until 2006 supports application of the discovery rule.), *see also generally Chafin v. West Virginia Division of Juvenile Services*, 2018 WL 1121556, *6 (S.D. W. Va. Jan. 25, 2018) (Inappropriate for a court to resolve issue of whether discovery rule based on repressed memory applied to sex abuse claims on motion to dismiss.).

Ignoring the allegations of psychological injury and repressed memories discussed above, the District argues that the Plaintiff must allege a recognized psychological condition to invoke the discovery rule. (Memorandum p.4). The cases cited by the District do not hold that a formal psychiatric diagnosis is required to invoke the discovery rule, however, and, regardless, the District's cases are applying the more strenuous fact pleading requirements of Illinois law and not the liberal notice pleading requirements used in federal courts. Indeed, the Illinois Supreme Court has noted that allegations of repressed memories would be sufficient to invoke the discovery rule, and that is what has been done here *See Clay v. Kuhl*, 189 Ill.2d 603, 610, 727 N.E.2d 217, 222 (2000) (Discovery rule did not apply where "[t]he plaintiff does not argue that she repressed her memories of the abuse, and the allegations in the complaint indicate that the

plaintiff was aware of the abuse as it occurred.").  The discovery rule applies in this case, and the Complaint is not time barred as a matter of law.

**B.      The Claims Are Timely Under the Fraudulent Concealment Doctrine.**

Plaintiff's claims are also timely under the fraudulent concealment doctrine, as codified in section 5/13-215 of the Illinois Code of Civil Procedure, which provides that:

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commended at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

735 ILCS 5/13-215.  This lawsuit was brought within five years of the Plaintiff's discovery of her claims in 2019, and thus the claims are timely under the fraudulent concealment doctrine.

Fraudulent concealment can be shown by affirmative facts or representations which are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim.  *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119, 1154, 943 N.E.2d 43,  72-73 (5th Dist. 2011).  Alternatively, where there is a fiduciary or trust or other confidential relationship between the plaintiff and the defendant, "the person occupying the position of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff, and his silence is as fraudulent as an actual affirmative false representation or act."  *Id. see also Doe v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶82, 66 N.E.3d 433, 459 (1st Dist. 2016). The applicability of the fraudulent concealment doctrine is a question of fact.  *Wisniewski* at 1172, 943 N.E.2d at 86 (Fraudulent concealment was a question of fact that the jury resolved in favor of the plaintiff.), *Doe* at ¶85, 87, 66 N.E.3d at457. (Questions of fact exist whether special relationship existed and whether defendant's acts or omissions, including its silence, amounted to fraudulent concealment.).

Both forms of fraudulent concealment occurred here. First, the District actively concealed its knowledge of Martin's abuse from students and parents, and instead held Martin out to be an upstanding teacher and allowed and encouraged her to have unfettered access to students as a teacher and coach. (C. ¶37-42, 46). (C. ¶ (C. ¶93-99, 103). Accordingly, Plaintiff's claims were tolled under the fraudulent concealment doctrine until they were discovered in 2019. (C. ¶30).

Second, a "special relationship" based upon trust existed between the Plaintiff and the District, who actively forged a close relationship between teachers and students. (C. ¶74). The District held itself and its agents out as counselors, instructors and authority figures for Lake Forest High School students, including the Plaintiff. (C. ¶75). The District fostered and encouraged a unique relationship between Martin and her students by allowing Martin use school grounds after-hours to congregate with students and allowed Martin to travel with students to and from extracurricular activities. (C. ¶76-79). This special relationship crated a duty for the District to reveal its knowledge about Martin's sexual abuse of female students, including Plaintiff. *See Wisniewski* at 1160, 943 N.E.2d at 77 (Relationship between church and a parishioner established special relationship creating a duty to disclose so that fraudulent concealment tolled the statute of repose.), *Doe*, 2016 IL App (1st) 152406 at ¶92, 66 N.E.3d at 459 (Fact issue existed whether the Boy Scouts of America was in a special relationship with plaintiff who was sexually abused as a minor by scoutmaster for purposes of fraudulent concealment statute.).

The District argues that a "special relationship" does not exist between a school district and a student under *J.O. v. Alton Community Unit School District*, but this case is only addressing the due process clause of the U.S. Constitution. 909 F.2d 267, 272 (7th Cir. 1990).

*J.O.* does not hold that a "special relationship" cannot exist between a school district and student for purposes of the fraudulent concealment statute under Illinois law, and even the case law cited by the District recognize that this is a question of fact. *Doe*, 2016 IL App (1st) 152406 at ¶92, 66 N.E.3d at 459

### C. Equitable Estoppel Applies Tolls the Statute of Limitations.

Finally, the District ignores the allegations of equitable estoppel, which applies if the defendant takes active stops to prevent the plaintiff from bringing suit. *Smith v. City of Chicago Heights*, 951 F.2d 834, 840 (7th Cir. 1992). The District concealed its knowledge of Martin's inappropriate and criminal conduct and misrepresented to students and their parents that Martin was safe, resulting in Plaintiff becoming sexually abused and then suppressing her memories of the abuse. (C. ¶40, 47-52). Under these circumstances, the District is estopped from relying on any statute of limitations, and the motion to dismiss must be denied.

## II. THE CLAIMS ARE NOT BARRED BY THE TORT IMMUNITY ACT OR THE SCHOOL CODE.

The District next argues that Plaintiff's claims are barred by immunity provisions contained in the Tort Immunity Act and the Illinois School Code. (Memorandum p.5-8). These are affirmative defenses for which the District has the burden of proof. *Doe v. Thorton Township High School District 205 Board of Education*, 2021 WL 1172608, \*7 (N.D. Ill. March 29, 2021). Because a plaintiff does not have to anticipate an affirmative defense, a complaint should not be dismissed on the basis of an affirmative defense unless the plaintiff has pled himself out of court by alleging facts sufficient to implicate relevant provisions of the Tort Immunity Act or School Code in the complaint itself. *Id.*

A.     **Section 2-201 Does Not Bar Plaintiff's Claims.**

The District argues that it is immune under Section 2-201 of the Tort Immunity Act for all personnel and investigatory decisions, including the failure to properly supervise Martin, terminate her employment, and investigate the claims of sexual assault and abuse. (Memorandum p.6-7).   Section 2-201 immunizes public employees from liability where the injury claimed is based on a discretionary policy decision, and provides that:

> Except as otherwise provide by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201.

Where applicable, Section 2-201 provides immunity from liability for both negligent and willful and wanton misconduct.  *Doe I v. Board of Education of City of Chicago*, 364 F.Supp.3d 849, 866 (N.D. Ill. 2019).  Section 10/2-201 by its terms only applies to employees, and not local public entities like the District.  *See generally Conyers v. City of Chicago*, 162 F.Supp.3d 737, 742-743 (N.D. Ill. 2016).

"Illinois courts apply a two-part test to determine which employees may be granted immunity under Section 2-201: the employee (1) must 'hold *either* a position involving the determination of a policy *or* a position involving the exercise of discretion,' and (2) must also have engaged in both the determination of policy *and* the exercise of discretion when performing the act or omission form which the plaintiff's injury resulted."   *Doe I* at 866. (internal citations omitted).  A policy choice is one that requires the governmental employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests. *Id.* at 867.  A discretionary act is one unique to a particular public office, while a ministerial act

is one which a person performs on a given state of facts in a prescribed matter without reference to the official's discretion as to the propriety of the act. *Id.*

The District argues generally that allegations relating to personnel and investigatory decisions are covered by section 2-201. (Memorandum p.6-7). Deciding whether section 2-201 applies is a fact-specific inquiry that "resists precise formulation" and "must be made on a case-by-case basis." *Snyder v. Curran Tp.*, 167 Ill.2d 466, 474, 657 N.E.2d 988, 992-993 (1995), *see also Doe I*, 364 F.Supp.3d at 867. As a result, federal district courts have routinely declined to dismiss cases based upon section 2-201, and instead have deferred decisions regarding the applicability of discretionary immunity until the parties have developed a full factual record that illuminates which employees acted and whether those actions qualify as discretionary policy decisions. *See Thorton*, 2021 WL 1172608 at *7, *Doe I*, 364 F.Supp.3d at 867 (Collection of cases).

Indeed, the allegations identified by the District that implicate section 2-201 do not contain sufficient information for the Court to find that immunity is available. The allegations do not identify the public employees who made the decisions at issue, and there is insufficient information for the Court to determine whether the actors were in a position involving the determination of policy or the exercise of discretion, and that they were engaged in both the determination of policy and the exercise of discretion when performing the acts for which the District seeks immunity. *Doe I*, 364 F.Supp.3d at 867, *see also Doe ex re. Doe v. White*, 627 F.Supp.2d 905, 923-924 (C.D. Ill. 2009) (Motion to dismiss denied where there were insufficient facts in the record for the Court to determine if the school administration's handling of reports of sexual abuse by a teacher were discretionary or ministerial.). Because Plaintiff was not required

to plead facts to anticipate and avoid the Tort Immunity Act and because the Complaint on its face does not show that section 2-201 bars any claims, the motion to dismiss must be denied.

**B.      Section 3-108 Does Not Bar Plaintiff's Claims.**

The District also argues that it is entitled to qualified immunity under section 3-108 of the Tort Immunity Act, which immunizes local public entities and public employees from liability for injuries incurred during their supervision of, or failure to supervise, activities on public property or the use of public property, unless they are guilty of "willful and wanton conduct." 745 ILS 10/3-108 (a)-(b).   (Memorandum p.8).   The Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, in not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210.

The District argues that Count IX, which alleges negligent supervision, should be dismissed because Plaintiff has not alleged willful and wanton conduct, but rather alleged that the District's conduct was made "with a reckless and conscious disregard for the safety and welfare of minor male students…"  (Memorandum p.8, C. ¶94).  The District also argues that negligent supervision allegations in Counts III, IV and V should similarly be dismissed under section 3-108.  (Memorandum p.8).

The allegations of wrongdoing in Count IX track the Tort Immunity Act's definition of "willful and wanton conduct," which expressly includes actions that were made in "conscious disregard for the safety of others…," 745 ILCS 10/1-210, and thus are sufficient to allege willful and wanton conduct under the federal notice pleading requirements.  *See generally Carlson ex rel. Stuczynski v. Bremen High School Dist. 228*, 423 F.Supp.2d 823, 830 (N.D. Ill. 2006) (Allegations that Defendants acted intentionally, wantonly and willfully sufficient, and plaintiff

was not required to articulate a more specific theory of wanton and willful behavior at this state of the litigation.), Fed. R. Civ. P. 9 (b) ("[C]onditions of a person's mind may be alleged generally.").

Likewise, all of the claims in the Complaint include allegations that the District had actual knowledge of Martin's s inappropriate sexual abuse and behavior with students, (C. ¶11, 31-36), which are more than sufficient to allow a plausible inference of "utter indifference to or conscious disregard for the safety of others" under the Tort Immunity Act's definition of "willful and wanton conduct." *See Doe ex rel. Doe v. White*, 627 F.Supp.2d at 922 (Allegations that school administrators were told that teacher was sexually grooming, harassing and/or abusing children and that nothing was done in response sufficiently stated a claim for willful and wanton conduct.)*, Thorton*, 2021 WL 1172608 at *8 (Allegations that school administrators had knowledge that coach had history of sexual abuse but failed to supervise or investigate him and allowed him to have isolated contact with student constitute willful and wanton conduct.).

Furthermore, section 3-108 only applies to negligent supervision claims on public property, and thus does not cover the claims for wrongful sexual conduct that occurred in Martin's car to and from school and softball games, and at Martin's friends' homes. (See C. ¶23,27). Counts III, IV, V and IX also include allegations unrelated to supervision, *see e.g.* C. ¶66 (e), 69 (e), 72 (e), (failure to intervene); ¶66 (f), 69 (f), 72 (f),  94 (d), (e), (f) (failure to warn students); ¶66 (g), 69 (g), 72 (g) (failure to investigate complaints), that are unaffected by section 3-108. *Doe v. Board of Education of City of Chicago*, 2020 WL 1445638, *15 (N.D. Ill. March 24, 2020) (Section 3-108 does not apply to claims for failure to report abuse and other conduct outside of supervision.). The District has not and cannot show that section 3-108 bars Counts III, IV, V and IX as a matter of law, and dismissal is not proper.

C.    **Section 24-24 Does Not Bar Plaintiffs' Claims.**

The District also argues that it is entitled to immunity under Section 24-24 of the Illinois School Code, which provides that "teachers, other certificated educational employees, and any other person, whether or not a certificated employee, providing a related service for or with respect to a student" shall "[i]n all matters relating to the discipline in and conduct of the schools and the school children… stand in the relation of parents and guardians of the pupils." 105 ILCS 5/24-24. (Memorandum p.7-8). Since a parent is not liable for injuries to his child absent willful and wanton misconduct, section 24-24 makes teachers immune from liability for ordinary negligence. *Kobylanski v. Chicago Board of Education*, 63 Ill.2d 165, 170, 347 N.E.2d 705, 708 (1976).

As even the case law cited by the District acknowledge, "Section 24-24, however, says nothing about school districts" and thus, "[w]here the complaint alleges the independent negligence of the school district … and not the vicarious liability of the district through the acts of a teacher,  the district is not entitled to immunity under section 24-24." *Courson ex rel. Courson v. Danville School Dist. No. 118*, 301 Ill. App. 3d 752, 704 N.E.2d 447, 449 (4th Dist. 1998), *see also Sidwell v. Griggsville Community Unit School Dist. Not. 4*, 146 Ill.2d 467, 472, 588 N.E.2d 1185, 1188 (1992) (Section 24-24 does not provide immunity to school districts.),

The District argues that the claims in Counts IV, V, VIII, IX and X should be dismissed because they "primarily rely on her allegations that the District was negligent." (Memorandum p.8). These claims do not seek to hold the District vicariously liable for a teacher's negligence in supervising the Plaintiff or other students, however, but instead seek to hold the District liable for its own negligence in failing to supervise and otherwise control its employee, Martin. Because the District's liability is not premised upon a teacher-student relationship between the

District and the Plaintiffs, section 24-24 does not apply. *Doe v. Board of Education for Sycamore Cmty H.S. Dist. #427*, 2018 WL 11212648, *3 (N.D. Ill. Nov. 16, 2018) (Section 24-24 did not apply because "[t]he alleged direct negligence of the District is not negligence arising out of the teacher-student relationship relating to the teacher's supervision of the student but, rather, negligence in connection to the separate function of making personnel decisions with respect to training, supervision, and retention.").

Furthermore, as discussed above, the Complaint alleges that the District had actual knowledge of Martin's inappropriate sexual abuse, so that its failure to supervise Martin rises to the level of willful and wanton conduct. The Complaint does not show on its face that Section 24-24 bars counts IV, V, VIII, IX and/or X, and the motion to dismiss must be denied.

## III.    THE COMPLAINT PROPERLY STATES CLAIMS AGAINST THE DISTRICT.

Finally, the District argues that all of the claims should be dismissed for failure to state a claim. (Memorandum p.9-15). Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief" which gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Because the Complaint meets this liberal notice pleading requirement, dismissal is improper.

### A.    Count VII Properly States a Claim for Intentional Infliction of Emotional Distress.

The District argues that Counts I, II and VII should be dismissed because these claims seek to hold the District vicariously liable for Martin's sexual abuse, and these acts are outside the scope of her employment. (Memorandum p.9). Plaintiff has no objection to dismissal of Count I (Childhood Sexual Abuse) and Count II (Battery) with respect to the District, but Count VII (Intentional Infliction of Emotional Distress) should not be dismissed because it is not based

upon vicarious liability, but rather seeks to recover for the District's own extreme and outrageous conduct in failing to intervene and protect the Plaintiff, and instead permitted Martin to abuse her. (*See* C. ¶84-86).

The District does not argue that the allegations in Count VII fail to satisfy the pleading requirements for the tort of intentional infliction of emotional distress, and indeed the wrongful conduct alleged in the complaint is extreme and outrageous enough to be actionable. *See generally Brookman v. Reed-Custer Community Unit, School District 255-U*, 2019 WL 4735395 (N.D. Ill. Sept. 27, 2019) (Allegations the defendants failed to intervene and thus permitted students to be sexually assaulted sufficiently stated claim for intentional infliction of emotional distress.). Because Count VII is not based upon vicarious liability for Martin's tortious conduct, the District's only argument for dismissal is meritless and must be rejected.

### B. Count III Properly Alleges Willful and Wanton Conduct.

The District next argues that Count III fails to allege a claim for willful and wanton conduct. (Memorandum p.9-11). "Under Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. Of Directors*, 593 F.3d 507, 514 (7th Cir. 2010). "A willful wanton claim has the additional requirement that the breach be not merely negligent, but with 'conscious disregard for the welfare of the plaintiff.'" *Id.*

Count III alleges that the District owed a duty to refrain from willful and wanton conduct and to exercise the utmost care for the welfare and wellbeing of the minor students at Lake Forest High School, which included a duty to supervise Martin and her activities with students, including Plaintiff, and the duty to report Martin's abuse of children under the Abused and

Neglected Child Reporting Act, 325 ILCS 5/1 *et seq.*. (C. ¶65). The District breached this duty by failing to supervise Martin and allowing Martin to continue her position as a teacher and coach with unrestricted access to students despite knowing that Martin was unfit and dangerous, failing to warn students and parents that Martin posed a danger, and otherwise demonstrating reckless disregard for Plaintiff's safety and wellbeing. (C. ¶66). As a direct and proximate result of this conduct, Plaintiff was subjected to sexual abuse and exploitation by Martin, resulting in injury. (C. ¶67).

The District argues that Count III fails to state a claim because it did not owe a duty to protect Plaintiff from Martin's criminal acts. (Memorandum p.9-10). While generally a person has no duty under Illinois law to act affirmatively to protect another from criminal conduct by a third party, "[t]here is an exception to this general rule where the defendant has a 'special relationship' with the plaintiff, and "Illinois courts have recognized that some relationships between public school districts and their students create a duty to protect, but only under certain circumstances." *Doe I*, 364 F.Supp.3d at 869, *quoting Doe-2 v. McLean County*, 593 F.3d at 515. Specifically, "a school district with unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect." *Doe-2* at 515 (citing *Doe v. Dimovski*, 336 Ill. App. 3d 292, 270, 783 N.E.2d 193, 200 (2nd Dist. 2003) (Allegations that the school board knew of a teacher's sexual misconduct with one female student sufficient to show a conscious disregard for the safety of other female students.). The District's citation to *J.O. v. Alton Community Unit School Dist.* for the proposition that a school district owes no specific duty to protect students from criminal attacks by others is misplaced, as the Court was not discussing a common law duty under Illinois law, but rather constitutional duties under the

Fourteenth Amendment which the 7th Circuit expressly admits are narrower and more restrictive than Illinois tort principles. 909 F.2d 267, 272 (7th Cir. 1990).

Plaintiff has properly alleged a duty owed by the District, as the District had actual knowledge of Martin's sexual abuse of students. By 1986, Martin's inappropriate sexual abuse of minor female students was witnessed by faculty members. (C. ¶31). Teachers and school administrators reported their concerns regarding Martin's conduct to the District, including details regarding Martin's sexual abuse. (C. ¶34). Martin's inappropriate sexual conduct with female students was well known in the school and community. (C. ¶35). These and other factual allegations support the existence of a duty by the District to protect students like Plaintiff. *See Thorton*, 2021 WL 1172608 at *6 (Allegations that School District knew about coach's history of sexual misconduct with students establish a duty to protect student from coach, and the failure to do so despite this knowledge makes the conduct willful and wanton.), *Doe I*, 364 F.Supp.3d at 869 (School Board had duty to protect students from school employee where complaint alleged that board had knowledge that employee posed a threat to the students.), *see also Doe v. Board of Education of City of Chicago*, 2020 WL 1445638 at *15 (Outright knowledge of prior sexual misconduct is not required, and Plaintiff properly pled willful and wanton conduct where it alleged that Board did not properly train or screen employees.). Additional factual specificity about the District's knowledge is not required by the federal pleading standards, and is unreasonable at this stage in the proceedings before discovery has occurred. *See generally Bartolotta v. Dunkin' Brands Group, Inc.*, 2016 WL 7104290, *3 (N.D. Ill. Dec. 6, 2016) (Unreasonable to require Plaintiff to provide further factual allegations where information is likely to be in the exclusive possession of Defendants.).

Additionally, the District owed a duty to protect Plaintiff from the harms created by its own conduct in continuing to employ Martin despite complaints about inappropriate sexual contact with students and its failure to warn students and parents of the dangers that Martin posed. (C. ¶66 (a), (b), (f)). These and other allegations allege that the Board created the risk that Martin would harass Plaintiff, and therefore assumed a duty to protect her. *Doe I*, 364 F.Supp.3d at 869.

The District also owed a duty to properly supervise its employee Martin, *Doe v. Coe*, 2019 IL 123521, ¶58, 135 N.E.3d 1, 16 (2019). This duty does not require actual notice that Martin sexually abused students, *Id.* at ¶61, 135 N.E.3d at 16. Rather, a duty to supervise exists where a harm is generally foreseeable, and "[i]t is generally foreseeable that abuse could occur in programs providing adults with unsupervised access to children." *Id.* at ¶62, 135 N.E.3 at 17. Thus, the District owed a duty to supervise Martin so as to protect children from sex offenders. *Id.*

Ignoring these duties, the District argues that there is no enforceable duty under the Abused and Neglected Child Reporting Act. (Memorandum p.9-10). While this statute may not create a private right of action, the District's breach of its mandatory duty to report its knowledge of Martin's sexual abuse is clearly evidence of its willful and wanton misconduct.

The District also argues that the Plaintiff failed to sufficiently allege that the District had knowledge of abuse under *Doe v. Bridgeforth*, 2018 IL App (1st) 170182, 102 N.E.3d 710 (1st Dist. 2018). This case holds that the evidence presented at trial did not support a finding that the Board of Education should have known that a school coach posed a danger to a student. *Id.* at ¶56, 102 N.E.3d at 725. *Bridgeforth* does not address the liberal notice pleading requirements of federal court, and provides no assistance to this Court.

17

The remaining cases cited by the District similarly provide no guidance, as they address summary judgment rulings after the parties completed discovery on the Defendant's knowledge, *See Fennerty v. City of Chicago*, 2015 IL App (1st) 40679, 33 N.E.3d 737 (1st Dist. 2015) (Summary judgment granted where Plaintiff failed to establish city's actual or constructive knowledge of the allegedly dangerous condition of the electrical box in the grassy median of a road as necessary to establish willful and wanton conduct), *Doe v. Boy Scouts of* America, 2014 IL App (2d) 130121, 4 N.E.3d 550 (2nd Dist. 2014) (Summary judgment granted, as evidence that employee would position himself in locker room to watch members of a boys swim team change was insufficient to require his termination.), or discuss alleged conduct that does not rise to the level of willful and wanton misconduct. *Brown v. Chicago Park District*, 220 Ill. App.3d 940, 581 N.E.2d 355 (1st Dist. 1991) (In case where minor was injured when a mirror fell from wall of park district indoor shower, allegations that park district employees knew mirror was on wall did not allege willful and wanton conduct, as there were no allegations of knowledge of an impending danger or a reckless disregard for that danger.).

Viewing the Complaint in the light most favorable to the Plaintiff as this Court must do, Count III plausibly alleges that the District had knowledge that Martin posed a danger to female students, and otherwise properly alleges an actionable duty of care. Accordingly, the motion to dismiss must be denied.

### C. The Complaint Properly Alleges an Actionable Duty in Negligence.

The District also argues that the negligence claims contained in Counts IV, V, VI, VIII, IX and X should be dismissed for the same reasons as Count III – failure to allege an actionable duty under Illinois law, and thus failed to allege a breach of duty. (Memorandum p.11)

Because, as discussed above, the Complaint alleges actionable duties, the District's argument for dismissal is meritless.

>    **D.**     **The Complaint States a Claim Under Title IX.**

The District next argues that Count XI fails to state a claim under Title IX. (Memorandum p.11-12). Title IX prohibits sex discrimination by recipients of federal education funding. 20 U.S.C. §1681 (a). "Title IX's ban on 'discrimination' prohibits a teacher or other school employee from sexually harassing or abusing a student." *Doe v. Board of Education of City of Chicago,* 2020 WL 1445638 at *2. "It is well established that a student may sue and recover damages against her school district for sexual harassment under Title IX." *Doe I*, 364 F.Supp.3d at 858.

To state a claim under Title IX, the plaintiff must plead and prove that (1) the educational institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of the plaintiff's education, or deprived the plaintiff of access to educational opportunities or benefits provided by the school. *Thorton*, 2021 WL 1172608 at *3, *Mary M v. North Lawrence Community School Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997). Additionally, because Title IX does not allow for vicarious liability, the plaintiff must also show that the school district or a school official with authority to institute corrective measures must have actual knowledge of, and was deliberately indifferent to, the harassment. *Thorton* at *3.

The Complaint satisfies all of these elements. Plaintiff alleges that the District was an educational institution that received federal funding. (C. ¶101). Plaintiff was sexually harassed and abused by Martin based on the sex of the Plaintiff. (C. ¶104). Martin's acts of sexual abuse and harassment were so severe, pervasive and objectively offensive that they deprived the

Plaintiff of access to educational opportunities. (C. ¶107). Based upon prior reports of abuse against Martin dating back to 1986, the District possessed actual knowledge of Martin's sexual misconduct, including sexual harassment, sexual discrimination and sexual abuse of minor students. (C. ¶106) Despite possessing decision making authority concerning the procedures and actions taken upon reports of sexual abuse, sexual harassment and sexual grooming, the District acted with deliberate indifference by failing to investigate reports of Martin's misconduct, ignoring or minimizing reports of Martin's sexual harassment and abuse, failing to properly documents complaints received concerning Martin's sexual misconduct, and failing to institute corrective actions to reduce the risk of harm and foreseeable acts of sexual harassment and sexual abuse perpetrated by Martin against Plaintiff and other students. (C. ¶108-110).

The District does not dispute that it received federal funding or that the sexual harassment and abuse was based on sex, but argues that the Plaintiff fails to allege that any official with authority to institute corrective measures had actual notice of Martin's alleged misconduct towards the Plaintiff. (Memorandum p.12) This misstates the law, as "a school district need not possess actual knowledge of a teacher's acts directed at a *particular plaintiff*, but it must still have actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.'" *Hansen v Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 605-606 (emphasis in original) (quoting *Delgado v Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). "Thus, if a teacher had been known to be a 'serial harasser,' a school district might be found to have actual knowledge of that teacher's misconduct and that students may be at great risk." *Id.*

As discussed above, the Complaint alleges that the District had actual knowledge that Martin had groomed and sexually abused her students as of 1986 when Martin began grooming

and abusing Plaintiff. (C. 11, 15, 31-35, 10). That the Complaint does not also allege that Plaintiff reported her sexual abuse and harassment to school officials is immaterial because school officials had actual notice of Martin's improper sexual conduct towards female students. *See Doe 4 v. Freeburg Community Consolidated School District*, 279 F.Supp.3d 807, 814 (S.D. Ill. 2017) (Summary judgment improper on Title IX claim because evidence showed school officials had actual notice of misconduct with minor male students well before anything happened to Plaintiff.)

The District also argues that the Complaint fails to allege that the District made an official decision not to remedy the situation or otherwise act with deliberate indifference. (Memorandum p.12). This ignores the allegations that the District ignored and failed to investigate reports of Martin's sexual conduct, failed to properly document complaints against the teacher, failed to communicate precautions with parents or students, and otherwise failed to take corrective actions to reduce the risk of harm and foreseeable acts of sexual abuse perpetrated against students, (C. ¶110), all of which are sufficient to show deliberate indifference. *Thorton*, 2021 WL 1172608 at *3 (Allegations that school officials failed to take any action to investigate reports of abuse or correct the situation sufficiently pled deliberative indifference for Title IX claim.), *Doe 4*, 279 F.Supp.3d at 815 (Summary judgment on Title IX claim improper where evidence showed School District took no action to monitor employee or to implement protective measures, and made no effort to communication any precautions to parents and students.).

Finally, the District argues that the Plaintiff does not allege any facts to indicate that she was deprived access to educational opportunities. (Memorandum p.12). "[C]ourts recognize that harassment by a *teacher* inherently harms students and affects their educational experience,"

and so "Plaintiffs need not allege specific facts showing precisely *how* their academic performance was affected…" *Doe I*, 364 F.Supp.3d at 861 (emphasis in original), *see also Gebser v. Lao Vista Independent School District*, 524 U.S. 274, 293 (1998) ("No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system.") Count XI states an actionable claim against the District under Title IX, and the motion to dismiss must be denied.

### E. The Complaint States an Actionable §1983 Claim Against the District.

Finally, the District argues that the constitutional claims in Counts XII and XIII should be dismissed. (Memorandum p.12-15). Plaintiff does not object to the dismissal of Count XII against the District, but Count XIII states a proper §1983 claim against the District under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Count XIII alleges that the District violated Plaintiff's constitutional due process rights by displaying reckless indifference to Plaintiff by acting under customs, policies or practices which encouraged or allowed Martin's sexual abuse of Plaintiff to occur. (C. ¶128-133). The Seventh Circuit indicated in *J.O. v. Alton*, one of the cases relied upon by the District, that this particular type of allegation could support a §1983 claim against a school district. 909 F.2d at 271, 272 (citing *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 730 (3rd Cir. 1989). The *Stoneking* court held that a plaintiff high school student who alleged that her band director sexually abused her could maintain a §1983 claim by alleging that the defendant school district acted "with deliberate indifference to the consequences" of its own "policy, practice or custom which directly caused her constitutional harm." 882 F.2d at 725. The *J.O.* plaintiffs had not alleged such a custom or practice by the defendant school district, and the Seventh Circuit

22

remanded the case to allow the plaintiffs an opportunity to amend their pleadings. *J.O.*, 909 F.2d at 273-274

To plead a §1983 action under *J.O.* and *Stoneking*, a plaintiff must allege "(1) that defendants established, through action or inaction, a policy, practice or custom; (2) that such policy, practice or custom was established with deliberate or reckless indifference to the consequences; (3) that such policy, practice or custom fostered a climate which facilitated sexual abuse of minor students by school employees; and (4) that the policy, practice or custom directly caused constitutional harm." *Doe v. Board of Education of Hononegah Community High School,* 833 F. Supp. 1366, 1379 (N.D. Ill. 1993).

The Complaint satisfies all of these requirements. It is well settled that students have a fundamental constitutional right to bodily integrity, and that sexual abuse is a violation of that substantive due process right. *Wudtke v. Davel,*128 F.3d 1057, 1063 (7th Cir. 1997). The District had policies and practices in place to not investigate allegations of sexual misconduct, to not remove employees accused of sexual misconduct from students, and to withhold information about teacher sexual abuse from parents and students. (C. ¶129-131). Despite knowing about Martin's improper sexual conduct with students, the District deliberately chose to not intervene, investigate, or otherwise act in response to those complaints. (C. ¶36). The District also concealed its knowledge about Martin's conduct from students and parents, and instead held Martin out to be an upstanding teacher and coach and encouraged Martin to have unfettered access to students. (C. ¶38). These policies and practices were made with deliberative indifference to the known risk that they would lead to Martin sexually assaulting other students, and they did cause Plaintiff to be sexually abused by Martin. (C. ¶128, 132-134). These and other allegations properly state a §1983 claim against the District, and the motion to dismiss is

23

meritless.  *See Hononegah,* 833 F. Supp. at 1379, fn 13 (N.D. Ill. 1993) (Allegations that school district's practice of not reporting instances of sexual abuse and other acts created a climate conductive to sexual abuse by the teacher properly stated a §1983 claim.), *Doe v. Evanston Township Consolidated School District*, 1994 WL 55652, *2 (N.D. Ill. Feb. 23, 1993) (Allegations that school district recklessly acted under a custom or policy that encouraged or allowed assaultive behavior stated a claim under §1983.).

The District argues that Plaintiff has not pled a §1983 action because a state actor's failure to protect an individual from private injury does not violate that individual's substantive due process rights unless there is a "special relationship" or the state "affirmatively places a particular individual in a position of danger," and neither exception applies here.  (Memorandum p.13-14).  Setting aside the fact that Plaintiff's abuse was perpetrated by a public school teacher and not a "private" actor, Plaintiff's §1983 claim is not based upon a constitutional duty to protect, and so the District's arguments and case law are inapplicable.  *See Stoneking*, 882 F.2d at 725 ("This is an independent basis for liability … which is unrelated to the [duty to protect] issue decided in *DeShaney*."), *Hononegah*, 833 F. Supp. at 1379 (Liability for policies or customs chosen or recklessly maintained is not dependent upon the existence of a special relationship between the municipal officials and the persons harmed.).

The District also argues that the Complaint fails to allege the existence of a custom, practice or policy rather than a random occurrence that caused Plaintiff's injury.  (Memorandum p.14-15).  To the contrary, the Complaint identifies District policies, practices and/or customs of withholding from the community allegations of sexual misconduct by its agents and employees, failing to fully investigate allegations of sexual misconduct by its agents or employees, and failing to remove agents and employees accused of sexual misconduct from the premises and

24

away from children. (C. ¶129-131). The Complaint further alleges that the District had knowledge that Martin was grooming and sexually abusing minor female students, yet deliberately chose to not document the complaints, intervene, investigate, or otherwise properly act. (C. ¶18, 31-36). These and other allegations identify policies, practices and/or customs that resulted in Plaintiff's sexual abuse by Martin. Count XIII states an actionable §1983 claim against the District for its policies and practices which showed a reckless indifference to the sexual abuse of students by Martin, and the motion to dismiss must be denied.

## III. LEAVE SHOULD BE GRANTED TO AMEND THE COMPLAINT IF THE COURT FINDS THAT THE FACTUAL ALLEGATIONS ARE INSUFFICIENT.

Plaintiff believes that the factual allegations in the Complaint are sufficient to state actionable claims against the District. To the extent that the Court believes that additional facts are necessary, Plaintiff requests leave to file an amended complaint to cure these pleading deficiencies. Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely given and "[t]he federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading." *Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Commission,* 377 F.3d 682, 687 (7th Cir. 2004).

## CONCLUSION

For these reasons, the District's motion to dismiss the Complaint should be denied. To the extent that the Court believes that additional facts are required, however, Plaintiff requests leave to amend the Complaint to cure any pleading defects.

Respectfully submitted,

**GOLDBERG & GOLDBERG,**
**on behalf of Sharon F.**


By:    /s/ Ian R. Alexander

Ian R. Alexander (Il Bar # 6228738)
Joseph M. Preiser (Il Bar # 6300587)
GOLDBERG & GOLDBERG
33 North Dearborn Street, Suite 1930
Chicago, IL 60602
(312) 368-0255
ira@bgoldberglaw.com
josephp@bgoldberglaw.com