UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON F., | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 2756 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CYNTHIA MARTIN, LAKE FOREST COMMUNITY HIGH SCHOOL DISTRICT 115, and LAKE FOREST HIGH SCHOOL, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sharon F. brings this suit against Cynthia Martin, her former teacher and coach at Lake Forest High School, and Lake Forest Community High School District 115, alleging state law torts and violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and the Fourteenth Amendment's Due Process Clause arising from sexual abuse allegedly inflicted on her as a student. Doc. 1. Martin and the District each move under Civil Rule 12(b)(6) to dismiss the complaint. Docs. 21, 40. The motions are granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider additional facts set forth in Sharon's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Sharon as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting

1

forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Martin was Sharon's teacher and coach at Lake Forest High School during her junior and senior years, when she was between 16 and 18 years old. Doc. 1 at ¶¶ 20-23, 25. During that time, Martin sexually abused Sharon and other female students. *Id*. at ¶¶ 13, 15, 25, 27-28, 54-57. The abuse occurred at the District's facilities, during travel to and from school and athletic events, in Martin's home, and in the homes of other Lake Forest High School teachers. *Id*. at ¶¶ 14-16, 23, 27. Although the abuse occurred from 1986 through 1988, Sharon suppressed her memories such that "she did not discover" until July 2019 that the abuse had occurred and injured her. *Id*. at ¶¶ 19, 30, 40.

The District—including its faculty, administrators, and school board members—knew about Martin's grooming and abuse of female students from both personal observations and reports. *Id*. at ¶¶ 11, 17-18, 31-35. Despite its knowledge, the District ignored complaints about Martin, failed to document or investigate those complaints, allowed and encouraged her to have access to students as a teacher and coach, and ultimately arranged for her a job in another school district. *Id*. at ¶¶ 17-18, 34, 36-39.

## Discussion

### I. Statute of Limitations

Defendants argue that Sharon's claims are barred by the applicable statutes of limitations. Doc. 22 at 2-5; Doc. 41 at 3-6. Under Civil Rule 8(a), "a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations," making dismissal appropriate only "if a plaintiff alleges facts sufficient to establish a statute of limitations defense." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) ("When a

defendant charges noncompliance with the statute of limitations, dismissal under Rule 12(b)(6) is irregular, for the statute of limitations is an affirmative defense.") (internal quotation marks and alterations omitted). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Those pleading standards apply to both federal and state law claims. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Dismissal is not warranted here. As noted, the alleged abuse occurred between 1986 and 1988, when Sharon was between 16 and 18 years old. Doc. 1 at ¶¶ 19-20. At that time, Illinois law provided a two-year statute of limitations for personal injury claims beginning when a plaintiff turned 18 years old, under which the limitations period for Sharon's claims would have expired sometime in 1990. *See* Ill. Rev. Stat. ch. 110, ¶¶ 13-202, -211 (1991). A subsequent extension of the statute of limitations for child sexual abuse claims, *see* 735 ILCS 5/13-202.2, enacted in 1991, is immaterial here because, if Sharon's claims had become time barred in 1990, the new statute could not revive them. *See Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000) ("[I]f [the plaintiff's] action was already barred … prior to the enactment of section 13-202.2, then the new statute could not have revived it … .").

To avoid dismissal on limitations grounds, Sharon invokes "the Illinois discovery rule, which tolls the statute of limitations until a plaintiff knows or should know that he has been injured and that his injury was wrongful." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see Doe v. Hastert*, 133 N.E.3d 1249, 1255 (Ill. App. 2019). In

childhood sexual abuse cases, the discovery rule applies when a plaintiff "allege[s] that she repressed the memories" of the abuse. *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000); *see Horn v. Goodman*, 60 N.E.3d 922, 929 (Ill. App. 2016) (holding that allegations "that [the plaintiff] repressed and suppressed memories of the abuse" were "sufficient to invoke the discovery rule"). At the motion hearing, Doc. 35, the parties agreed that the Illinois discovery rule—like the two-year statute of limitations—applies not only to Sharon's state law claims, but also her due process claims (brought under 42 U.S.C. § 1983) and Title IX claim. *See Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013) ("For claims brought under § 1983, we borrow the limitations period and tolling rules applicable to personal-injury claims under state law."); *Doe v. Howe Mil. Sch.*, 227 F.3d 981, 988-89 (7th Cir. 2000) (assuming that Title IX borrows the state statute of limitations for personal injuries).

Sharon's claims fall within the discovery rule, at least at the pleading stage. The complaint alleges that Sharon "suppressed the memories of the abuse she suffered as a minor until recently when she discovered that she had been suppressing the memories of her abuse, discovered her injuries, and became aware of her causes of action," Doc. 1 at ¶ 40, and places the date of discovery in July 2019 "at the earliest," *id*. at ¶ 30. July 2019 is less than two years before Sharon filed this suit in May 2021.

Defendants contend that Sharon does not properly invoke the discovery rule because she fails to explicitly allege that a psychological condition caused her to repress her memories of abuse or what event caused her recollection to return in 2019. Doc. 22 at 3-4 (citing *Clay v. Kuhl*, 696 N.E.2d 1245, 1250-52 (Ill. App. 1998)); Doc. 42 (Martin's counsel arguing, at the hearing on her motion, that Sharon was required to allege an event triggering her recollection). But federal pleading standards do not demand such allegations, as "a plaintiff ordinarily need not

4

anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Even if repressed memories trigger the discovery rule only when a psychological condition caused the repression—an issue the court need not decide at this juncture—the mere omission of allegations regarding a psychological condition or triggering event does not prevent a plaintiff from benefitting from the discovery rule in opposing a motion to dismiss. *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."). Put another way, because the complaint does not foreclose the possibility that a psychological condition caused her repressed memories, Sharon has not "affirmatively plead[ed] [her]self out of court" by alleging facts that "plainly reveal that the action is untimely." *Chi. Bldg. Design*, 770 F.3d at 614 (internal quotation marks and alterations omitted).

Accordingly, Sharon's claims survive dismissal on timeliness grounds. Defendants may reprise their limitations defense on summary judgment (or at trial) on a full evidentiary record.

**II.     Merits**

    **A.     The District**

Title IX prohibits sex discrimination in educational programs that receive federal financial assistance. *See* 20 U.S.C. § 1681(a). Sex discrimination under Title IX encompasses a teacher's sexual harassment or abuse of a student. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992). A plaintiff seeking to hold a school district liable under Title IX for such harassment or abuse "must prove that an official of the school district who at a minimum has authority to institute corrective measures ha[d] actual notice of, and [was] deliberately indifferent to, the teacher's misconduct." *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (internal quotation marks and alteration omitted).

The District disputes that it had actual knowledge of Martin's alleged misconduct. Doc. 22 at 12. Sharon, however, repeatedly alleges that the District had actual knowledge of sexual misconduct directed by Martin at female students. Doc. 1 at ¶ 11 ("[The District] had actual knowledge, by and through the observations of MARTIN's fellow teachers and coaches, of MARTIN's inappropriate behavior … ."); *id*. at ¶ 17 ("Despite [the District's] knowledge of MARTIN's history of sexual battery of female students … [it] continued to tacitly condone MARTIN's behavior by failing to take action against her."); *id*. at ¶ 18 ("[The District] was aware of widespread reports about MARTIN's inappropriate sexual conduct with students but chose to ignore those reports and to take no action to protect its students."); *id*. at ¶ 33 ("[The District], including its teachers, administrators, and school board members, knew of MARTIN's inappropriate sexual behavior with students."); *id*. at ¶ 34 ("[T]eachers and school administrators reported their concerns regarding MARTIN's conduct to the Lake Forest School District … [including] details regarding the … sexual abuse by MARTIN."); *id*. at ¶ 38 ("[The District] knew about MARTIN's conduct … ."); Doc. 29 at 11 ("[T]he Complaint include[s] allegations that the District had actual knowledge of Martin's … inappropriate sexual abuse and behavior with students … ."). At the pleading stage, those well-pleaded allegations suffice for purposes of a Title IX claim, for even though the complaint does not allege that the District knew that Martin was abusing Sharon in particular, "a school district need not possess actual knowledge of a teacher's acts directed at a *particular plaintiff*," provided that it has "actual knowledge of misconduct that would create risks so great that they are almost certain to materialize if nothing is done." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605-06 (7th Cir. 2008) (internal quotation marks omitted). Sharon's allegations meet that standard. *See id*. at 606

6

("Thus, if a teacher had been known to be a 'serial harasser,' a school district might be found to have actual knowledge of that teacher's misconduct and that students may be at great risk.").

Relying on Title IX case law addressing peer-to-peer harassment, the District contends that Sharon fails to allege that Martin's alleged sexual misconduct was so severe or pervasive as to deny her educational opportunities. Doc. 22 at 12 (citing *Doe v. Galster*, 768 F.3d 611, 613 (7th Cir. 2014)). But as the Supreme Court has explained, "a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher," and such harassment and abuse thereby "undermines the basic purposes of the educational system." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). Accordingly, "harassment by a *teacher* inherently harms students and affects their educational experience." *Doe I v. Bd. of Educ.*, 364 F. Supp. 3d 849, 861 (N.D. Ill. 2019). It follows that the sexual misconduct alleged here plausibly deprived Sharon of educational opportunities.

In its reply brief, the District argues that it cannot be liable under Title IX because it did not have "substantial control" over Martin after school and off school grounds. Doc. 32 at 13. That argument is forfeited because it was raised for the first time in a reply brief. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). In any event, the complaint alleges that Martin "utilized the facilities provided to her by [the District] at [Lake Forest High School] to engage in … childhood sexual abuse of female students." Doc. 1 at ¶ 14. That allegation supports an inference that the District could have controlled at least some of Martin's sexual abuse of Sharon, even under its own understanding of control.

The complaint also states a viable due process claim against the District under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A school district may be liable for "adopting and maintaining a practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students' complaints about such conduct." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989); *see T.E. v. Grindle*, 599 F.3d 583, 590 (7th Cir. 2010) (holding that *J.O. v. Alton Community Unit School District 11*, 909 F.2d 267 (7th Cir. 1990), and *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996), "suggest[] that a *Stoneking* theory of liability is viable" in the Seventh Circuit). The complaint alleges such a policy, practice or custom of reckless indifference that caused constitutional violations, Doc. 1 at ¶¶ 131-134, and makes supporting allegations that the District (including its governing board) knew of Martin's repeated sexual misconduct against multiple students and took affirmative steps to conceal it, *id*. at ¶¶ 13, 17-18, 31-38. Accordingly, the *Monell* due process claim (Count XIII of the complaint) survives dismissal.

Sharon's state law childhood sexual abuse and battery claims, and her state-created danger due process claim (Counts I, II, and XII), are dismissed as to the District, as she does not oppose their dismissal. Doc. 29 at 12-13.

For Sharon's remaining state law claims, the District argues that the *in loco parentis* provision of the Illinois School Code, 105 ILCS 5/24-24, and the supervision provision of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/3-108, immunize it from liability. Doc. 22 at 7-8. The District's argument fails because Sharon alleges that the District engaged in willful and wanton conduct, Doc. 1 at ¶ 67 (alleging that the District's acts and omissions were "willful and wanton"); Doc. 29 at 10-11 (arguing that

8

the complaint supports an inference that the District acted with "utter indifference to or conscious disregard for the safety of others"), and neither provision offers immunity for such conduct, as the District acknowledges. Doc. 22 at 7-8; *see In re Est. of Stewart*, 60 N.E.3d 896, 909 (Ill. App. 2016) ("Each of those sections [Section 24-24 of the School Code and Section 3-108 of the Tort Immunity Act] provides immunity against negligent conduct but not against willful and wanton conduct."). The District may renew on summary judgment its argument for immunity under those provisions.

The parties advance reasonable and cogent arguments on the question whether a different provision of the Tort Immunity Act, 745 ILCS 10/2-201, immunizes governmental entities even for willful and wanton conduct. *See ibid.* (immunizing "a public employee serving in a position involving the determination of policy or the exercise of discretion … when acting in the exercise of such discretion"). Because Section 2-201's plain language focuses on individuals rather than entities, the answer to that question "is not so clear cut." *Conyers v. City of Chicago*, 162 F. Supp. 3d 737, 742 (N.D. Ill. 2016). Resolving that question would have no impact on this case at this juncture because, regardless of its answer, the case will remain in federal court (as Sharon's Title IX and *Monell* claims against the District survive), and because discovery on the federal and state law claims will be coextensive (as both rest on the same factual predicate). Accordingly, the court declines to dismiss the state law claims on the pleadings pursuant to Section 2-201, knowing that it will have an opportunity to address that defense if the District renews its argument on summary judgment.

For the same reason, the court also defers deciding whether Sharon has viable claims on the merits for intentional infliction of emotional distress, willful and wanton misconduct, and negligence against the District. *See Papadakis v. Fitness 19 IL 116, LLC*, 148 N.E.3d 648,

9

653-54 (Ill. App. 2018) ("[T]o recover for willful and wanton conduct, a plaintiff must first plead the elements of negligence (duty, breach of duty, injuries proximately caused by the breach) and then also plead a heightened state of mind. … [I]n the appropriate case, the same facts that are alleged to constitute negligent conduct could be sufficient to allege willful and wanton conduct."). Again, the District may reprise its arguments regarding the merits of those claims on summary judgment or at trial.

### B. Martin

Martin does not move to dismiss Sharon's claims for childhood sexual abuse, battery, negligence, infliction of emotional distress, and violation of due process (Counts I, II, IV, VII, VIII, and XII) on the merits. Doc. 41 at 6. Sharon concedes that her claims for negligent failure to follow policies and procedures, breach of fiduciary duty, failure to supervise, negligent retention, and Title IX discrimination (Counts V, VI, IX, X, and XI) should be dismissed as to Martin. Doc. 44 at 7. The only dispute regarding Sharon's claims against Martin concerns the willful and wanton misconduct claim (Count III).

As a general rule, Illinois does not recognize an independent tort for willful and wanton misconduct. *See Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994) ("There is no separate and independent tort of 'willful and wanton' misconduct."). A recognized exception provides that such a claim can proceed against public employees. *See Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 788 (N.D. Ill. 2019) (collecting post-*Ziarko* cases "acknowledging the viability of such a claim against public officials, employees and entities, but not private individuals and entities"). Moreover, the court will construe the willful and wanton misconduct claim as alleging generally Martin's "deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012); *see* Fed. R. Civ. P. 9(b) ("[C]onditions of a person's mind may be alleged

10

generally."). If Sharon proves that Martin acted willfully and wantonly when committing an independent tort, she may be able to recover punitive damages. *See Doe v. Catholic Bishop of Chi.*, 82 N.E.3d 1229, 1233 (Ill. App. 2017) ("[W]hether [a] defendant's conduct was sufficiently willful and wanton to support an award of punitive damages is generally a question of fact for the jury to decide.").

## Conclusion

The District's motion to dismiss is granted in part (as to the state law childhood sexual abuse and battery claims, and the state-created danger due process claim) and otherwise is denied. Martin's motion to dismiss is granted in part (as to the state law claims for negligent failure to follow policies and procedures, breach of fiduciary duty, failure to supervise, and negligent retention, and the Title IX discrimination claim), and otherwise is denied. Defendants shall answer the surviving portions of the complaint by April 14, 2022.

March 24, 2022

_____
United States District Judge