**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHARON F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-CV-02756 |
| | ) | |
| CYNTHIA MARTIN, LAKE FOREST | ) | Judge John J. Tharp, Jr. |
| COMMUNITY HIGH SCHOOL | ) | |
| DISTRICT 115, and LAKE FOREST | ) | |
| HIGH SCHOOL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Sharon F. seeks damages from Cynthia Martin, Lake Forest Community High School District 115, and Lake Forest High School (the latter two entities, collectively, "the District") for alleged sexual abuse perpetrated by Martin while Sharon was her student at Lake Forest High School. Sharon alleges that Martin began a sexual relationship with her in 1986, while Sharon was still a minor. Under Illinois law, the then-applicable two-year statute of limitations arguably began to run on July 16, 1987, when Sharon turned eighteen. But because Sharon introduced evidence indicating that she did not know Martin's conduct was wrongful until 2019, questions of fact remain as to whether the discovery rule delays the accrual of Sharon's claim. The defendants' motion for summary judgment is therefore denied. Because Sharon sued under a pseudonym without first seeking leave of court, however, she is directed to show cause why her full name should not be set forth in the case caption by June 19, 2026.

## BACKGROUND

The events giving rise to this case began in 1985, when Sharon F. moved to Lake Forest, Illinois. Def.'s Resp. Pl.'s 56.1 Statement 2 ¶ 5, ECF No. 135. Sharon attended Lake Forest High

School, where she met Cynthia Martin, a teacher and coach at the high school. Pl.'s Resp. Def.'s 56.1 Statement 2 ¶ 7, ECF No. 129. When the two met, Martin was in her mid-twenties. *Id.* at 2 ¶ 8. Throughout Sharon's time at Lake Forest High School, she was a minor; her eighteenth birthday was on July 16, 1987. *Id.* at 1 ¶ 2. Sharon and Martin began a sexual relationship in the fall of 1986, when Sharon was seventeen years old. *Id.* at 4 ¶ 14. Their relationship lasted through at least Sharon's freshman year of college, and the two remained in contact for years after that. *Id.* at 7 ¶ 22; *id.* at 8 ¶ 29. Sharon graduated from college in 1992 and from medical school in 2000. She completed her residency in 2003, specializing in internal medicine. Her training also included pediatric medicine. Sharon filed this lawsuit in 2021, alleging that she did not know until 2019 that Martin's conduct was wrongful.

Sharon was always consciously aware of the nature of her relationship with Martin (*i.e.*, she does not claim that she ever repressed her memory of the sexual nature of the relationship). Sharon admits "that she has always been aware—from 1986 until 2024—that she engaged in a sexual relationship with Cindy." *Id.* at 9 ¶ 31. She maintains, however, that until July 2019 she believed that it was a "normal, healthy relationship," in part due to Martin's alleged attempts to convince her of such. *Id.* at 9 ¶ 30; Def.'s Resp. Pl.'s 56.1 Statement 10–11 ¶ 32. Sharon subsequently discussed the relationship with several people over the years, including a friend in college, her first wife, her treating clinician (in 2015), and her therapist (in 2016). Pl.'s Resp. Def.'s 56.1 Statement 9–10 ¶¶ 32–35. In July 2019, Sharon's daughter started high school—an event that Sharon says caused her to reflect on her relationship with Martin, and to start seeing their relationship in a different (and unfavorable) light. Def.'s Resp. Pl.'s 56.1 Statement 7–8 ¶¶ 24–25. Sharon also alleges that it was not until then that she "discovered" that her relationship with Martin

was abnormal, and that only then did she come to understand the harm the relationship had caused her. *Id.* at 8 ¶¶ 25–26.

Sharon brought this action against Martin and the District in 2021, seeking damages for the alleged harm she suffered because of her relationship with Martin. Although not alleged in the complaint, it appears that this Court has jurisdiction under 28 U.S.C. § 1331 based on federal claims asserting violations of Title IX, 20 U.S.C. § 1681 (Count XI), and Fourteenth Amendment due process claims based on state-created danger (Count XII) and municipal policy (Count XIII). Section 1367 provides supplemental jurisdiction as to state law theories advanced for childhood sexual abuse (Count I), Battery (Count II), Willful and Wanton Misconduct (Count III), Negligence (Count IV), Negligent failure to follow established policies and procedures (Count V), Breach of fiduciary duty (Count VI), Intentional Infliction of Emotional Distress (Count VII), Negligent Infliction of Emotional Distress (Count VIII), Failure to Supervise (Count IX), and Negligent Retention (Count X).[1]

The defendants moved to dismiss the case, partially on the basis that the statute of limitations had run. Judge Feinerman, who was previously assigned to this case, denied the statute of limitations argument on a motion to dismiss, but explicitly stated that the defendants could "reprise their limitations defense on summary judgment (or at trial) on a full evidentiary record."

---

[1] No party contends that there is diversity jurisdiction in this case.

Mem. Op. 5, ECF No. 51.[2] After some discovery,[3] Martin moved for summary judgment, again arguing that the statute of limitations bars Sharon's claim.[4]

## DISCUSSION

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmovant bears the burden of proof at trial, as the plaintiff does here, she must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Weaver*, 28 F.4th at 820.

### I.     Filing Pseudonymously

Sharon filed her case under a pseudonym (Sharon F.) without first seeking leave of court as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). The defendants contend that this is cause

---

[2] With the exception of the state-created danger, childhood sexual abuse, and battery claims against the District, as to which Sharon did not object to dismissal, the court allowed the claims against the District to go forward. Mem. Op. 11. As to the claims against Martin, Sharon did not object to dismissal of the claims for negligent failure to follow policies and procedures, breach of fiduciary duty, failure to supervise, negligent retention, and Title IX discrimination. The court allowed the remaining claims against Martin to go forward.

[3] Martin moved to stay further discovery when she filed her motion for summary judgment. Sharon did not object. Min. Entry, ECF No. 121.

[4] The District joined Martin's motion but did not assert any other arguments.

enough to dismiss the complaint. There are a number of problems with this contention, not least that it should have been brought up at the motion to dismiss stage, but Sharon does not respond to it. (Perhaps because it appears to be added to the defendants' brief as an afterthought, in a footnote.) Regardless, the only case the defendants cite in which a court dismissed an action solely based on filing pseudonymously is *W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001), a Tenth Circuit case. But the Tenth Circuit, unlike the Seventh, has held that filing anonymously without permission deprives the court of jurisdiction over the unnamed parties, *id.* at 1172, so the reasoning in *Yocom* does not apply. Absent controlling precedent to the contrary, the Court declines to dismiss the case on this basis.

The Court recognizes, though, that the Seventh Circuit has emphasized that "[t]he norm in federal litigation is that all parties' names are public." *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 491 (7th Cir. 2024). Despite this background presumption, district judges may "permit pseudonymous litigation when the balance of harms justifies it." *Id.* at 492. Anonymity may be justified if a court finds that the plaintiff "is a minor, is at risk of physical harm, or faces improper retaliation." *Id.* at 493. In order to evaluate whether the balance of harms supports anonymity here, the Court directs Sharon to show cause why her name should not be disclosed to the public.

## II. Statute of Limitations

The defendants principally argue that they are entitled to summary judgment because the statute of limitations bars Sharon's claim. The parties agree that the Illinois statute of limitations applies to both the plaintiff's state-law and federal-law theories. Mem. Op. 3–4. Illinois law provides a two-year statute of limitations for personal injury claims. 735 Ill. Comp. Stat. 5/13-202. If the injured person is a minor at the time the injury occurs, they have two years after they turn eighteen to bring suit. *Id.* § 513-211 (West 2026). The Illinois personal injury statute of limitations

applies to federal claims brought under Section 1983. *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years.").

The parties also agree that the two-year Illinois personal injury statute also applies to Sharon's Title IX claim. Although the Seventh Circuit has not expressly addressed the question, in *Doe v. Howe Mil. Sch.*, 227 F.3d 981 (7th Cir. 2000), the Court of Appeals noted, without endorsing, that the trial court "borrowed the state statute of limitations for personal injury actions—the state law claim the [district] court viewed as most similar to the Title IX allegations— and applied it to the Title IX claims." *Id.* at 987. In light of the parties' agreement, this Court takes the same path.

In 1991, the Illinois legislature enacted a provision specific to childhood sexual abuse, and has since extended the limitations period on various occasions to bring a suit for personal injury based on childhood sexual abuse. 735 Ill. Comp. Stat. 5/13-202.2(b) (West 2026). As Judge Feinerman previously pointed out, however, the extensions did not revive claims that had already expired. Mem. Op. 3 (citing *Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000) ("[I]f [the plaintiff's] action was already barred . . . prior to the enactment of section 13-202.2, then the new statute could not have revived it . . . .")). If the limitations period began running on the day Sharon turned eighteen (July 16, 1987), then, her claim would have expired on July 16, 1989—prior to the 1991 legislative extension of the limitations period. If her claim did not accrue until 2006 or later, on the other hand, the statute of limitations would not yet have expired.[5]

---

[5] Sharon explains that this is because in 2006, the statute of limitations for childhood sexual abuse was five years, 735 Ill. Comp. Stat. 5/13-202.2 (eff. July 24, 2003), meaning a claim that accrued in 2006 would not yet have expired by the time of the 2011 amendment extending the limitations period to twenty years. *Id.* (eff. Jan. 1, 2011).

Importantly, a claim's accrual may be delayed by the discovery rule, a feature of both Illinois and federal common law. Illinois law suspends the limitations period until "the party seeking relief 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000) (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)). Under federal common law, the discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). No party contends that there is any material difference between state and federal common law regarding application of the discovery rule, and the parties treat Illinois law as controlling on this issue as well; accordingly, the Court assesses their arguments about accrual under Illinois law.[6]

The discovery rule's applicability "is generally resolved as a question of fact." *Clay*, 727 N.E.2d at 221. Invoking the statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c), but a plaintiff invoking the discovery rule "has the burden of proving the date of discovery." *Super Mix of Wis., Inc. v. Nat. Gas Pipeline Co. of Am., LLC*, 167 N.E.3d 149, 157 (Ill. App. Ct. 2020).

Sharon contends that the discovery rule preserves her claims. Though she does not assert that she repressed or forgot the fact of her sexual relationship with Martin, she says the discovery

---

[6] While state law supplies the limitations period for Sharon's claims, federal law governs the determination of when her federal claims accrued. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). State law governs the accrual of the limitations period for her state law claims, however. *See Bowden v. City of Franklin*, 13 F. App'x 266, 274 (6th Cir. 2001) ("[T]he Court must look to state law to determine when the claim for relief accrues when that claim is before a federal court on diversity or supplemental jurisdiction."). But in view of the fact that none of the parties contend that there is any substantive difference between state and federal common law on this issue, the Court conducts the same statute of limitations and accrual analysis for all claims at issue. *See Tate v. Sheahan*, No. 17-cv-00997, 2019 WL 2248543, at *2 n.2 (N.D. Ill. May 24, 2019).

rule applies because her injuries were not manifest until 2019 and because she did not realize that Martin's actions were wrongful until that time. The Court concludes that the intertwined questions of when Sharon knew or should have known that she suffered injuries due to Martin's wrongful conduct are material questions of fact that must be resolved by a jury.

### a. Knowledge of Injury

In her response, Sharon briefly mentions that her injuries "first physically manifested themselves in 2019 with Sharon's discovery that her relationship with Martin was abusive and inappropriate." Def.'s Resp. Pl.'s 56.1 Statement 8 ¶ 26. The limitations period does not begin until the plaintiff "knows or reasonably should know of his injury." *Parks*, 737 N.E.2d at 294. A plaintiff, however, need not "fully discover the nature of her injuries" for the limitations period to start running. *Clay*, 727 N.E.2d at 222.

Sharon acknowledges that she suffered emotional distress prior to 2019, Def.'s Resp. Pl.'s 56.1 Statement 9 ¶ 29, but did not recognize what had caused it. *Id.* at 9 ¶ 28. The same was true, the defendants say, of the plaintiff in *Clay*, who alleged that "her injuries were latent to some extent and did not fully manifest themselves until years after the abuse occurred." *Clay*, 727 N.E.2d at 222. The Illinois Supreme Court declined the plaintiff's request to apply the discovery rule, finding that a plaintiff need not discover "the full extent of his or her injuries" for the limitations period to start. *Id.* The court also reasoned that "Illinois law presumes an intent to harm and a resulting injury from the type of misconduct allegedly committed by [the defendant]." *Id.*; *see also Doe v. Carlson*, 71 N.E.3d 806, 810 (Ill. App. Ct. 2017) ("[K]nowledge of injury is presumed where the victim was aware of the sexual abuse as it was occurring." (citation removed)). In light of this presumption, the court concluded, the plaintiff knew or should have known that she had suffered injury.

But critically, Sharon maintains that she did not realize that she was being sexually abused. She believed that she was in a loving and protective relationship, whereas Clay "was always aware of the misconduct." *Clay*, 727 N.E.2d at 220. "*Clay*'s holding therefore . . . is that the discovery rule cannot save a plaintiff's otherwise time-barred claim for childhood sexual abuse when the plaintiff 'was *aware of the abuse as it occurred* and does not allege that she repressed memories of that abuse.'" *Doe v. Soc'y of the Missionaries of the Sacred Heart*, No. 11-cv-02518, 2012 WL 5499430, at *5 (N.D. Ill. Nov. 13, 2012) (quoting *Parks*, 737 N.E.2d at 294). If, as Sharon contends, she did not know that Martin's conduct was abusive, she could not have known that it was harming her. And there is no evidence of record that Sharon was aware of any such harm.

### b. Wrongful Causation

Sharon's primary argument is that she did not know, nor should she reasonably have known, that her injury was wrongfully caused. "The notion of 'wrongful cause,' as it has been developed by courts in Illinois, has two elements: that of cause and that of wrongfulness." *Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 101 (Ill. App. Ct. 2011). Sharon argues that she "had been groomed by [Martin] since the age of sixteen to believe that their relationship was special, loving and normal," Resp. 9, which prevented her from learning that her injuries were wrongfully caused until 2019.

The defendants contend that even if Sharon did not subjectively appreciate the wrongfulness of Martin's actions until recently, she at least should have known her injuries were wrongfully caused, pointing again to the Illinois Supreme Court's decisions in *Clay v. Kuhl* and *Parks v. Kownacki*. In *Clay*, the plaintiff brought an action based on childhood sexual assault that

9

had occurred over a decade prior. She sued the defendant in 1996, when she was thirty-one.[7] 727 N.E.2d at 221. The plaintiff argued that the discovery rule applied because she "alleged that it was not until June 1994 that she realized that [the defendant's] misconduct caused her injuries." *Id.* at 219. The Illinois Supreme Court disagreed, finding that her claim was barred. But the discovery rule elements at issue in *Clay* were that of injury and cause, not wrongfulness. The majority in *Clay* determined that the plaintiff "was always aware of the misconduct charged," *Clay*, 727 N.E.2d at 221, unlike Sharon, who says she did not know it was misconduct at all until years later. *Clay* does not answer the question of whether a plaintiff's ignorance of the wrongfulness of the defendant's actions can delay claim accrual.

Nor does *Parks* answer that question. The plaintiff in *Parks* sued the alleged perpetrator of her childhood sexual abuse twenty-two years after she turned eighteen. 737 N.E.2d at 293. As in *Clay*, the plaintiff "was always aware of the abuse since the time it occurred," but did not know that it had caused her injuries. *Id.* at 294. Significantly, in *Parks* the court did not conclude that the plaintiff knew the sexual relationship was wrong simply because it occurred; rather, the court found it to be "clear from her actions"—telling her parents and reporting the defendant's conduct to his superior—that the defendant's conduct was wrongful. *Id.* at 294–95. *Parks*, then, does not stand for the proposition that the discovery rule has no application in any case where the victim recalls the conduct but did not comprehend its wrongfulness at the time it occurred.

The defendants also place undue reliance on *Softcheck v. Imesch*, 855 N.E.2d 941 (Ill. App. Ct. 2006). In *Softcheck*, the plaintiffs alleged that they did not "begin to perceive the wrongfulness of the [sexual] conduct" of the defendants until long after the statute of limitations had run because

---

[7] The Court notes that the events underlying both *Clay* and *Parks* took place before the legislature extended the statute of limitations for childhood sexual abuse, as in the case at hand.

the defendants were priests who "repeatedly assur[ed] plaintiff[s] that [defendant priests'] directions, instruction and conduct were morally, socially and religiously beneficial." *Id.* at 943–44. The Illinois Appellate Court, interpreting *Clay* and *Parks*, determined that the discovery rule did not apply because adults are presumed to know that "sexual contact between 9– to 14–year–old boys and an adult is not only harmful and wrong but also that it results in injury." *Id.* at 948. The court also noted that "[t]here is no allegation in plaintiff's complaints that defendants or anyone tried to convince the plaintiffs, after they reached their majority, that sex between a priest and a child is not wrongful but, rather, beneficial to the child's growth." *Id.* On those facts, the court reasoned, one could not draw the reasonable inferences necessary for the discovery rule to apply. *Id.*

But the facts here are different. Unlike an eighteen-year-old who remembers the details of the sexual abuse they suffered from the ages of nine to fourteen, an eighteen-year-old who is still in a relationship with the person she began to have sexual contact with at seventeen cannot as clearly be expected to know that the sexual contact was "harmful and wrong." *Cf. Koelle v. Zwiren*, 672 N.E.2d 868, 874 (Ill. App. Ct. 1996) (taking into consideration that "plaintiff was half defendant's age and inexperienced in relationships" in determining whether the discovery rule could apply). This is not to suggest that the conduct alleged was not, in fact, harmful and wrong, only that a jury could reasonably decline to find that the impropriety of Martin's sexual conduct was so obvious to Sharon—when she reached the age of twenty and still maintained a friendship with Martin—that she knew or should have known that Martin's sexual advances had actually been predatory and exploitative. What is more, the *Softcheck* court found it significant that "[t]here is no allegation . . . that defendant[] or anyone tried to convince the plaintiff[], after [she] reached [her] majority, that sex between a[n adult] . . . and a child is not wrongful but, rather, beneficial to

11

the child's growth." 855 N.E.2d at 948. But here, Sharon alleges that even after she turned 18, Martin continued her efforts to prevent Sharon from understanding that their relationship was inappropriate. Def.'s Resp. Pl.'s 56.1 Statement 11 ¶ 33. And Sharon, in what a jury could reasonably conclude was in a vulnerable and compromised state, took little convincing. Due to the relevant factual differences between *Softcheck* and the instant case, this Court declines to reach the same conclusion as the *Softcheck* court.

Because Illinois case law does not definitively answer the question posed here, the defendants' motion simply comes down to whether a jury could find that Sharon reasonably failed to appreciate that Martin's actions were wrongful prior to 2006. And on this record, the Court finds that a reasonable jury could do just that. This case arose in a unique context: a relationship between two females in the 1980s, one of whom was seventeen and the other in her mid-twenties, and it continued into Sharon's adulthood. None of the cases on which the defendants rely compel the conclusion that a person in Sharon's situation would have realized, in the particular context of this case, that Martin's conduct was inappropriate and harmful. As noted above, whether the discovery rule applies in a given case is usually a question for the jury. This case shows why.

The defendants argue that no reasonable jury could find that Sharon did not realize the relationship was wrong until 2019, both because she is a doctor and because she discussed the relationship with several people over the years, including her therapist. Summ. J. Mem. 13, ECF No. 114; Reply 5, ECF No. 136. While those facts might provide reason to question Sharon's credibility and an assessment of when the discovery rule should apply, that is an argument that must be made to a jury. Even if this Court were persuaded that Sharon should have appreciated the wrongfulness of Martin's actions sometime before 2019, the factfinder must determine where the line should be drawn. To illustrate why, take one example: assume that Sharon's experience as a

12

doctor gave her the necessary knowledge that Martin acted wrongly. Did that happen before or after 2006? The record is unclear, and thus this Court is unable to determine whether the discovery rule can save Sharon's claims.

*     *     *

Sharon claims that she did not know her injuries were wrongfully caused until 2019, and that her claims therefore did not accrue until that year. Questions of fact relevant to that contention remain, including what was reasonable for Sharon to believe in the context of the nature of her relationship with Martin, and when. Those questions must be answered by a jury. For the reasons discussed, the defendants' motion for summary judgment is denied.

Date: June 10, 2026

John J. Tharp, Jr.
United States District Judge

13